# United States Court of Appeals
## For the First Circuit

No. 06-1765

JOSÉ FERNANDO RODRÍGUEZ-ORTIZ,

Plaintiff, Appellant,

v.

MARGO CARIBE, INC.; MICHAEL J. SPECTOR,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Lynch, Circuit Judge.

Celina Romany Siaca, with whom Celina Romany Law Offices was
on brief, for appellant.
Heidi L. Rodríguez, with whom Pietrantoni Mendez & Alvarez LLP
was on brief, for appellees.

June 18, 2007

**LYNCH**, **Circuit Judge**. José Fernando Rodríguez-Ortiz filed a federal securities fraud claim against his former employer Margo Caribe, Inc. and its chief executive officer, Michael J. Spector (collectively, "Margo") over Margo's refusal to allow Rodríguez to exercise certain stock options after he resigned from the company. The district court dismissed the claim for failure to meet the pleading standards of the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(b), and Rodríguez now challenges that dismissal. As to Rodríguez's primary theory of fraud, under the PSLRA, Rodríguez has not pleaded "facts giving rise to a strong inference" of scienter. Id. § 78u-4(b)(2). Rodríguez adverts to a second theory as well, but even assuming such a theory were available, he has not sufficiently specified the "statement alleged to have been misleading" under that theory. Id. § 78u-4(b)(1). We thus affirm the dismissal of Rodríguez's federal securities fraud claim.

## I.

Because we are reviewing a motion to dismiss, we recite the facts as alleged in Rodríguez's complaint in the light most favorable to him. See In re Cabletron Sys., Inc., 311 F.3d 11, 22 (1st Cir. 2002).

Rodríguez worked for Margo Caribe as its president and chief operating officer, beginning no later than 2001. On or about February 9, 2001, Rodríguez was offered a compensation package from

the company that was to include stock options under the 1998 Margo Stock Option Plan. Subsequently, Rodríguez and the company signed a Stock Option Agreement, dated March 2, 2001. The Stock Option Agreement, at section 5(b), provided that if Rodríguez terminated his employment "voluntarily (with or without the consent of [Margo Caribe])," the options would become fully vested and could be exercised for a period of time after the separation.

On September 3, 2003, at Spector's request, Rodríguez and Spector began to discuss the possibility of Rodríguez's resignation. The parties began to negotiate a separation agreement, but on September 12, after the parties' attorneys had worked out the details of an agreement, Margo withdrew from the negotiations and informed Rodríguez that no agreement would be forthcoming. That same day, Rodríguez tendered his resignation. Rodríguez asserts that throughout the negotiations, he

> at all times notified Margo of his intention to exercise his rights under the Stock Option Agreement in the event of his resignation and was led to believe by Margo that his resignation would, and could, not be treated as [a] dismissal for any purposes, including without limitation, for purposes of the Stock Option Agreement.

On October 20, 2003, Rodríguez filed suit against Margo Caribe in federal court in Puerto Rico, initially asserting a COBRA claim and a state law claim for bad faith withdrawal from the separation agreement negotiations. These claims are not at issue on appeal.

-3-

On October 31, 2003, Rodríguez informed the company of his intention to exercise his options under the Stock Option Agreement. On November 14, the company replied that Rodríguez's resignation would be treated as a dismissal under the Agreement, that as a result the company had the right to terminate his options, and that the company intended to exercise its right of termination. That same day, the company also issued a press release stating that Rodríguez had been dismissed from the company on August 29, 2003.

On November 24, 2003, Rodríguez amended his complaint to add Spector as a defendant and to add a federal securities fraud claim under sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated by the Securities and Exchange Commission thereunder, 17 C.F.R. § 240.10b-5. Rodríguez also added a state law claim for breach of the Stock Option Agreement. On March 31, 2004, Rodríguez further amended his complaint and added a state law claim for securities fraud. The alleged fraud was that the company "never intended to honor the terms and conditions of the Stock Option Agreement" and that the company and Spector had made misleading "representations regarding the effect of [Rodríguez's] resignation" under the Agreement.

Margo filed a motion to dismiss, arguing, inter alia, that the federal securities claim should be dismissed for failure

to satisfy the heightened pleading standards of the PSLRA and Federal Rule of Civil Procedure 9(b).[1]

The motion to dismiss was referred to a magistrate judge, who recommended that it be denied in its entirety. On the securities fraud claim, the magistrate judge found that Rodríguez had satisfied the heightened pleading standards "by providing the time, place, date and content of the alleged misrepresentation," namely the "promise" in the Stock Option Agreement itself "that in the event of [Rodríguez's] resignation the full Option would vest."

On August 29, 2005, the district court issued an opinion and order in which it declined to adopt the magistrate judge's recommendation on this point and determined instead that Rodríguez had not satisfied the pleading standards of the PSLRA. The court found that Rodríguez had "failed to specify a materially misleading statement or omission, in connection with the sale" of securities, and that while he had alleged "misrepresentations right and left," he had not "specifie[d] their time, place and content." Moreover, the court noted that "given the juxtaposition of the alleged fraud with the dismissal and not the original sale of the option," the complaint seemed to impermissibly allege "fraud in hindsight." As a result, the district court granted the motion to dismiss the

---

[1] Rule 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity." We have previously held that our pre-PSLRA case law interpreting Rule 9(b) in the context of securities fraud claims is "consistent with the PSLRA." Greebel v. FTP Software, Inc., 194 F.3d 185, 194 (1st Cir. 1999).

federal securities claim. The court declined to exercise supplemental jurisdiction over the state law claims.[2]

## II.

Our review of the district court's granting of the motion to dismiss is de novo, and we may affirm on any ground apparent in the record. See Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 5-6 (1st Cir. 2006).

At the outset, we note that even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967 (2007). In so doing, the Court disavowed the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Twombly, 127 S. Ct. at 1969. The Court found that the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim," and that "after puzzling the profession for 50 years, this famous observation has earned its retirement." Id. at 1968, 1969.

---

[2] The district court adopted the magistrate judge's recommendation to deny the motion to dismiss the COBRA claim. The parties later settled this claim.

To make out a claim under section 10(b) and Rule 10b-5, Rodríguez needed to allege that

> (1) [Margo] made a materially false or misleading statement or failed to state a fact necessary to make a statement not misleading; (2) in connection with the purchase or sale of a security; (3) with the intent to deceive, manipulate, or defraud; and that (4) [Rodríguez] was injured by his reasonable reliance on [Margo's] misrepresentations.

Wortley v. Camplin, 333 F.3d 284, 294 (1st Cir. 2003); see also Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). The first and third elements are critical here.

The PSLRA imposes two heightened pleading requirements on federal securities fraud claims, beyond the requirements of Rule 8. First, to support allegations of misleading statements or omissions, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). This standard is "congruent and consistent with the pre-existing standards of this circuit" under Rule 9(b), Greebel, 194 F.3d at 193, under which we required the "specification of the time, place, and content of an alleged false representation," id. (quoting McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980)) (internal quotation marks omitted).

-7-

Second, allegations of scienter must be made by stating "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The "required state of mind" for liability under section 10(b) and Rule 10b-5 is "intent to deceive, manipulate, or defraud," Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976), or recklessness that goes beyond "ordinary negligence and is closer to a lesser form of intent," Greebel, 194 F.3d at 199.

On a motion to dismiss in a securities fraud case, this "strong inference" standard has several consequences. A court continues to take all factual allegations as true and to draw all reasonable inferences in favor of the plaintiff. See Aldridge v. A.T. Cross Corp., 284 F.3d 72, 78-79 (1st Cir. 2002). However, as to scienter, not any inference will do: the ultimate inference of scienter must be a strong one. See Cabletron, 311 F.3d at 28. This involves some assessment of the strength of inferences. This circuit has adopted the rule that the inference of scienter is not strong "when, viewed in light of the complaint as a whole, there are legitimate explanations for the behavior that are equally convincing." In re Credit Suisse First Boston Corp., 431 F.3d 36, 49 (1st Cir. 2005). Furthermore, in this circuit we have avoided the use of any "rigid pleading formula" for determining the sufficiency of allegations of scienter, "instead 'preferring to

rely on a "fact-specific approach" that proceeds case by case.'"[3] Ezra Charitable Trust, 466 F.3d at 6 (quoting Cabletron, 311 F.3d at 38).

Rodríguez argues that he has met both of these pleading requirements, but on his primary theory, while he has specified the misleading statements, he has not alleged facts to support a strong inference of scienter. He adverts briefly to another theory, but whether or not he has sufficiently alleged scienter as to that theory, he has not specified the misleading statements in support of that theory. Because Rodríguez cannot meet both requirements as to any one theory, his claim was properly dismissed.

Rodríguez argues that he has satisfied the requirement to specify the "time, place, and content" of the alleged misleading representations by pointing to section 5(b) of the Stock Option Agreement, which provided for the vesting of his options following a voluntary resignation. The theory is that when a party "makes a specific promise, as part of the consideration for the transfer of securities, to perform an act, while intending not to perform the act, this may constitute a basis for a fraud finding." Wortley, 333 F.3d at 294 (citing United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1221 (10th Cir. 2000), aff'd, 532 U.S. 588 (2001)). Rodríguez contends that Margo misled him into

---

[3] See Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 601 (7th Cir. 2006) (describing the different approaches in the various circuits), cert. granted, 127 S. Ct. 853 (2007).

accepting options as part of his compensation package, while secretly intending either never to allow the exercise of the options at all, or at least never to allow their exercise following a voluntary resignation.

In the context of such a claim, however, the requisite scienter is an intent to deceive at the time the promise was made, not a later intent to break a promise already made.  See Wharf Holdings, 532 U.S. at 596-97 (distinguishing a federal securities claim from an "ordinary state breach-of-contract" claim on the basis of an allegation of a "secret[] inten[t] from the very beginning not to honor the option" (emphasis added)).  Thus, under the PSLRA, Rodríguez was required to allege facts sufficient to establish a strong inference that in 2001, when the Agreement was signed, Margo intended to deceive Rodríguez by agreeing to section 5(b) while secretly intending to violate it.

It is on this requirement that Rodríguez's claim founders.  His allegations of wrongdoing relate almost entirely to the later period starting on September 3, 2003, when he and Spector began to discuss the possibility of his resignation.  Rodríguez argues that his resignation was merely a "triggering event" that provided the occasion for Margo to act on its "long standing" intention to violate section 5(b) of the Agreement.  Rodríguez points primarily to the alleged violation itself, however, as the basis on which to infer that intention.

The bare allegation that Margo violated the Agreement in 2003 is not enough to establish a strong inference that Margo never intended to abide by the Agreement when it signed it in 2001. To hold otherwise would be to permit the pleading of a form of "fraud by hindsight," essentially inferring earlier knowledge based only on the situation that later came to pass. This we have consistently rejected. See, e.g., Ezra Charitable Trust, 466 F.3d at 6.

Nor do Rodríguez's additional allegations help to establish a strong inference of Margo's intent in 2001. Rodríguez points to the November 2003 press release as showing that Margo had a hidden intention to treat his resignation as a dismissal. But by its terms, the press release stated only that Rodríguez had been dismissed as of August 2003, which bears no relationship to Margo's intentions in 2001. Similarly, in an apparent attempt to allege bad faith on Margo's part, Rodríguez makes much of the fact that it was not until "after the breakdown in the negotiations of a separation agreement," that he learned "that he had been dismissed." Like the press release, such an allegation suggests that it was only later that Margo decided to treat Rodríguez as dismissed, thereby weighing against a strong inference of scienter in 2001.

Rodríguez also argues that Margo claimed broad discretion in interpreting the Agreement and that such claims support an

inference that Margo never intended to be bound by the Agreement. The complaint, however, only specifically alleges that after Rodríguez's resignation, Margo claimed the discretion to treat that resignation as a dismissal. Again, there are no allegations to support an inference that Margo had any such interpretation of the Agreement prior to 2003. Rodríguez did not allege any facts suggesting that Margo had ever considered how it might interpret section 5(b) of the Agreement before the issue arose in 2003, or that either party had considered the issue in signing the Agreement.[4] Cf. Wortley, 333 F.3d at 295 (finding that a jury could reasonably conclude that a contractual promise was fraudulently made where the promisor never intended to keep the promise and the promisee had made it clear to the promisor that such a promise was indispensable to the agreement).

Finally, Rodríguez attributes significance to the allegation that the proposed, but unexecuted, separation agreement would have required him to waive his right to sue Margo, including for breach of the Stock Option Agreement. It is not apparent why such a provision, freely agreed upon, would have indicated wrongful

---

[4] The lack of any such facts also shows that Rodríguez has not alleged that Margo had a motive and opportunity to commit fraud by hiding its intended interpretation of the Agreement. See Greebel, 194 F.3d at 197 (finding the pleading of motive and opportunity neither necessary nor always sufficient for a strong inference of scienter, but finding it potentially relevant to the issue).

intent in 2003, let alone why it has any bearing on Margo's intent in signing the Stock Option Agreement.

Thus, even considering the various facts offered by Rodríguez in combination, see Aldridge, 284 F.3d at 82, he failed to plead facts sufficient to raise a strong inference of scienter. The constellation of facts pleaded are at least equally, if not more, consistent with an inference that Margo chose its course only after relations soured. See Credit Suisse, 431 F.3d at 49. Rodríguez alleged little that is probative of Margo's intent when it signed the Stock Option Agreement, and hence is unable to raise a strong inference as to that intent.

Rodríguez has also suggested a separate theory that Margo knew from the beginning of the separation agreement negotiations in September 2003 that it intended to treat Rodríguez's resignation as a dismissal and that it hid this intention from Rodríguez. Under this theory, distinct from the one above, the deception lay in the misrepresentation of Margo's intentions at the time Rodríguez decided to resign. In support of this theory as a basis for liability under the securities laws, Rodríguez cites to Smith v. Duff & Phelps, Inc., 891 F.2d 1567 (11th Cir. 1990). In Smith, the Eleventh Circuit held that in some situations an employee's decision to resign or retire can be an investment decision for purposes of federal securities law, triggering a requirement on the part of management to disclose objective material information. Id.

at 1574.  Assuming, without deciding, that <u>Smith</u> is good law, it is doubtful that this case falls within either the rule or the rationale of <u>Smith</u>, but we need not decide the issue.  Nor need we decide whether Rodríguez sufficiently pleaded scienter even if such a theory were plausible.

It is clear that any putative claim based on this theory fails under the PSLRA because Rodríguez did not sufficiently specify the relevant misrepresentations.  Rodríguez's complaint repeatedly makes only the general claim that he "was led to believe by Margo that his resignation would, and could, not be treated as [a] dismissal for any purposes, including without limitation, for purposes of the Stock Option Agreement."  Nowhere does the complaint specify what statements led Rodríguez to such a belief, nor when and in what context such statements were made.  Nor does the complaint specify any instances in which Margo misled Rodríguez by failing to correct any expressions to the contrary.  Such a general allegation falls far short of the requirement to specify the "time, place, and content" of the alleged misrepresentations or misleading omissions.  <u>See</u> <u>Greebel</u>, 194 F.3d at 193.

Because Rodríguez did not meet both of the PSLRA's pleading requirements with respect to either of his theories of liability, his claim for federal securities fraud was properly dismissed.

The judgment of the district court is <u>affirmed</u>.  Costs are awarded to appellees.