# United States Court of Appeals
## For the First Circuit

No. 07-1623

CHRISTOPHER DEMAYO,

Plaintiff, Appellant,

v.

ROBERT NUGENT and JEFFREY LUGAS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Christopher DeMayo, pro se, was on brief for appellant.
Brian J. Rogal was on brief for appellees.

February 22, 2008

**STAHL**, **Senior Circuit Judge**.    Plaintiff-appellant Christopher DeMayo appeals from a district court's order denying his motion for partial judgment on the pleadings and granting a dismissal on the basis of qualified immunity in favor of Massachusetts State Police (State Police) Troopers Robert Nugent and Jeffrey Lugas, Defendant-appellees.  DeMayo's complaint alleged that Nugent and Lugas violated his right to be free from unreasonable searches under the Fourth Amendment of the United States Constitution.  See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  Although the district court determined that Nugent and Lugas infringed DeMayo's constitutional rights by entering his home without a search warrant or exigent circumstances, it nevertheless dismissed DeMayo's claims on the basis of qualified immunity.  Because we hold that the district court erred in its analysis of whether the right that Nugent and Lugas violated was clearly established, we reverse the decision below, render partial judgment in favor of DeMayo, and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

In reviewing the district court's decision to deny judgment on the pleadings in favor of DeMayo, we review the factual allegations in the light most favorable to Nugent and Lugas, the non-moving parties.  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006).  Conversely, in reviewing the district court's

order dismissing DeMayo's claims, we examine the record in the light most favorable to DeMayo, the plaintiff. See Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94 (1st Cir. 2007); Pagan v. Calderon, 448 F.3d 16, 30-31 (1st Cir. 2006).[1] We conduct our review of each of these questions de novo. See Local 791, United Food & Commercial Workers Union v. Shaw's Supermarkets, Inc., 507 F.3d 43, 46 (1st Cir. 2007) (judgment on the pleadings); Pagan, 448 F.3d at 30 (dismissal). The salient facts, set forth below, are taken from the parties' pleadings.[2] See Aponte-Torres, 445 F.3d at 54-55 ("A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole.")

On May 6, 2004, at around 8:00 a.m., a United Parcel Service (UPS) employee notified the State Police that a suspicious package had arrived at UPS's Lynnfield facility. The package was addressed to an individual named "Debbie Moore," was entrusted to the care of "Chris DeMayo," and was sent by "Susan Kelty." Shortly thereafter, Nugent, in his capacity as a member of the Drug Enforcement Administration (DEA) Task Force Group #3, traveled to

---

[1]Nugent and Lugas never actually filed an independent motion to dismiss, merely requesting dismissal in their response to DeMayo's motion under Rule 12(c). Nevertheless, the standard of review remains unchanged. See Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001).

[2]The court relies heavily upon two documents attached to DeMayo's pleadings, namely Nugent's Report of Investigation and Nugent's Application for Search Warrant and its corresponding affidavit. See Fed. R. Civ. P. 10(c).

the UPS facility to investigate the report. There he was joined by other officers. Nugent indicated that his suspicions were raised by the box's heavy taping, its California return address, and the lack of a requirement for a signature. At approximately 9:15 a.m., a drug-sniffing dog under the supervision of the State Police signaled the presence of narcotics in the box. Later, at 9:55 a.m., DEA Special Agent Robert Donovan, acting in an undercover capacity, called Kelty to confirm that she wished UPS to deliver the package. Kelty responded that it was a "very important package" for her terminally ill sister, whose condition necessitated delivery rather than pickup.

At approximately 11:20 a.m., Donovan, disguised as a UPS employee and accompanied by a number of other task force officers, including Nugent and Lugas, conducted a controlled delivery to DeMayo's residence. Gary DeMayo,[3] the plaintiff's father, opened the door, remaining in the threshold. Indicating that he could accept the package for Chris DeMayo, he began to sign his name when provided with a signature sheet. While Gary DeMayo was still in the process of signing for the package, Donovan gave a "prearranged" signal for the arrest team to advance to the home. At this point, Gary DeMayo had only signed his first name. Nugent and Lugas brushed by Gary DeMayo, entered the residence, and then

---

[3]For clarity, we will continue to refer to Gary DeMayo by his first and last names.

proceeded to conduct a brief protective sweep of the house lasting approximately fifteen to twenty seconds. During this sweep, Lugas encountered a "frail looking woman," later identified as Debbie Moore, DeMayo's mother and the intended recipient of the package, "exiting a bathroom on the second floor of the house."

When confronted by the now-revealed officers, Gary DeMayo refused to identify himself. He informed the officers that he had no identification on-hand, as he was only residing at the home temporarily. He refused to accept the package and stated that he would not sign for it, despite his earlier acquiescence. Nugent's report indicates that, after the officers' entry into the home, Gary DeMayo became "belligerent and uncooperative." Ultimately, the officers issued Gary DeMayo a criminal summons and seized the package after indicating their intent to obtain a search warrant for it. According to Nugent and Lugas, Nugent subsequently obtained a warrant to search the package,[4] which was then revealed to be conspicuously devoid of narcotics, containing only sandals, two packages of underwear, two boxes of cold compresses for injuries, a figurine, a white visor, and women's shirts wrapped in a towel.

Plaintiff brought suit against Nugent and Lugas, as well as DEA Group Supervisor Michael McCormick and the State Police, in

---

[4]Here, the parties disagree; DeMayo maintains that the search warrant was not properly signed.

Massachusetts Superior Court in Middlesex County on May 5, 2006, alleging the violation of his constitutional rights as well as various state law claims.[5]   After considerable procedural wrangling, the case was removed to the United States District Court for the District of Massachusetts because Michael McCormick was a federal officer and Nugent and Lugas were acting as federal agents as part of the DEA task force.  Eventually, all parties other than Nugent and Lugas were dismissed from the case, and the only remaining claim against them lies under Bivens.

On November 17, 2006, DeMayo moved for partial judgment on the pleadings as to liability against Nugent and Lugas.  They filed a response on December 12, 2006, requesting dismissal.  Despite holding that Nugent and Lugas violated DeMayo's constitutional rights under the Fourth Amendment, the district court denied DeMayo's motion and granted dismissal in favor of the defendants on the basis of qualified immunity.

## II.  ANALYSIS

### A.  Constitutional Violation

The Bivens doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a private cause

---

[5]DeMayo originally brought his claims without knowledge that Nugent and Lugas were part of a DEA task force, rendering 42 U.S.C. § 1983 the appropriate avenue for relief, although his complaint does not explicitly indicate whether the action lay under § 1983 or Bivens.  The parties and the district court, however, all treated the suit as lying under Bivens after the officers' roles were revealed.

of action for damages against federal officials in their individual capacities. See McCloskey v. Mueller, 446 F.3d 262, 271-72 (1st Cir. 2006). A claimant who seeks relief under Bivens must prove the violation of a constitutional right by a federal agent acting under color of federal law. See 403 U.S. at 397; Redondo-Borges v. U.S. Dep't of Housing & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005). The parties agree that, at the time of the search, Nugent and Lugas were acting as federal agents under color of federal law. Nugent and Lugas, however, contest the district court's determination that their intrusion into DeMayo's home constituted a violation of his constitutional rights.

We begin with the "basic rule . . . that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional" under the Fourth Amendment. Groh v. Ramirez, 540 U.S. 551, 564 (2004). "To show exigent circumstances, the police must reasonably believe that 'there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.'" United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005) (quoting Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999)). "Proof of exigent circumstances should be supported by particularized, case-specific facts, not simply generalized suppositions about the behavior of a particular class of criminal suspects." Id. (citation omitted). An individual may vindicate a

proven violation of his or her right to be free from unreasonable searches through a <u>Bivens</u> action. <u>See</u> 403 U.S. at 397.

First, we note that, as the district court recognized, the primary factual predicate for the alleged constitutional violation occurred when the officers first breached the threshold of DeMayo's home. In their briefing to the district court, Nugent and Lugas ignored the alleged illegal entry, focusing instead on justifying the protective sweep that was conducted once the officers had already entered the home. The defendants' efforts to justify the subsequent protective sweep miss the mark and, at best, conflate two distinct concepts. Here, because the officers indisputably lacked a warrant and no consent to search was given, Nugent and Lugas were required to demonstrate the presence of an exigency to justify their intrusion into the home.

On appeal, Nugent and Lugas offer three different explanations for their entry. All three of these arguments are waived because, as explained above, the defendants defended their actions in the district court by attempting to justify a protective sweep, not the initial entry itself. These theories are factually and analytically distinct and, thus, are not interchangeable. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Martins</u>, 413 F.3d 139, 149-50 (1st Cir. 2005) (analyzing the propriety of a protective sweep <u>following</u> lawful entry due to exigent circumstances). Nugent and Lugas may not now switch their theories on appeal. <u>See</u> <u>Curran</u> v. <u>Cousins</u>,

-8-

509 F.3d 36, 47 n.6 (1st Cir. 2007); see also Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 258 (1st Cir. 1999) (explaining that "nonmovant[s may not] switch horses in midstream").

Nevertheless, like the district court, we conclude that, even if not waived, the defendants' attempt to show exigent circumstances is without merit. For coherency, we address each different contention in turn. First, Nugent and Lugas claim that Gary DeMayo's belligerence raised their suspicions. As DeMayo points out, however, Nugent's own DEA report shows that DeMayo's father became belligerent only after the officers entered the home.[6] Whatever insight might be gleaned from his behavior, it cannot serve as an ex post facto basis for the officers' initial intrusion into the home.

Second, Nugent and Lugas assert in their brief that "they" heard a toilet flush, which they purportedly presumed meant that someone in the home was attempting to dispose of narcotics, having been alerted to the presence of law enforcement officers. Despite the fact that there is no record evidence of any toilet flushing, Nugent and Lugas urge that this fact can be "inferred"

---

[6]Nugent and Lugas maintain that the timeline with respect to this issue is inconclusive. We see no such uncertainty in the narrative sequence; Nugent's own investigative report clearly reveals that Gary DeMayo became "uncooperative and belligerent" only after the officers entered the home. The unremarkable fact that each reported event is not time-stamped does not suggest any ambiguity.

-9-

from the record on the basis of Lugas's brief encounter with a woman exiting a bathroom during his protective sweep of the house. As an initial matter, this argument was never presented to the district court in any form and, consequently, has been waived. See Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 218 (1st Cir. 2006). Furthermore, the unsupported supposition suggested by the defendants is far too attenuated from the record evidence, even given the judgment on the pleadings context, and is more akin to rank speculation than a reasonable inference. See Marrero-Gutierrez v. Molina, 491 F.3d 1, 10 (1st Cir. 2007); Marlon v. W. New England Coll., 124 F. App'x 15, 16 (1st Cir. 2005) (per curiam) (unpublished opinion).

Finally, Nugent and Lugas maintain that the officers harbored legitimate concerns regarding their safety and the preservation of evidence. We have recognized that such issues may, under certain circumstances, constitute exigencies sufficient to justify a warrantless entry into a home. See Samboy, 433 F.3d at 158-59 (discussing the need to protect evidence from imminent destruction); Hegarty v. Somerset County, 53 F.3d 1367, 1378-79 (1st Cir. 1995) (finding exigent circumstances where officers were positioned in vulnerable locations after having cornered a dangerous suspect). Moreover, we do not impose an unforeseeability requirement upon law enforcement officers seeking to avail themselves of the exigent circumstances exception. See Samboy, 433

-10-

F.3d at 160.  Nevertheless, police officers may not manufacture an exigency or unreasonably and deliberately delay obtaining a warrant.  See id.; Martins, 413 F.3d at 148-49.[7]

On these facts, it is evident that the officers did not act upon particularized, case-specific facts.  Indeed, the record shows that Nugent and Lugas entered DeMayo's home based on a prearranged signal given the moment that Gary DeMayo began to sign for the package.  The record is utterly devoid of any evidence justifying a warrantless entry at the juncture when the entry occurred.  The contents of the package were not in immediate danger of disposal and no threat had been posed to the officers.  Holding that exigent circumstances justified Nugent and Lugas's intrusion into DeMayo's home would be tantamount to creating a blanket rule permitting warrantless entry into a home in the controlled delivery context, at least when there is arguably not time to obtain a warrant.  To the contrary, we have consistently held that officers must be able to point to specific facts in the record to justify a warrantless entry based on exigent circumstances, even in the

---

[7]The parties disagree about whether the officers had sufficient time to obtain a warrant.  Although we base our ruling on other grounds, we note that the package was delivered more than two hours after the police dog alerted to the package.  Moreover, it is unclear why Donovan could not simply have told Kelty that the package, which was already delinquent, would be delivered later in the day, permitting even more time for the police to obtain a warrant.  It would be counterintuitive to permit government officials to rely on exigent circumstances when they have arranged for an unnecessarily early delivery time that artificially precludes the possibility of obtaining a warrant.

controlled delivery context. See, e.g., Samboy, 433 F.3d at 158-59.

In reaching this conclusion, we do not seek to impose any extraordinary requirements upon law enforcement. Under even slightly different facts, the result in this case might well be different. See United States v. St. Pierre, 488 F.3d 76, 79 (1st Cir. 2007) (recognizing exigent circumstances justifying warrantless entry of drug dealer's apartment where drug courier's failure to return to apartment might alert drug dealer of law enforcement); Hegarty, 53 F.3d at 1379 (finding exigent circumstances where suspect had exhibited violent, irrational behavior and demonstrated antagonism toward law enforcement personnel). Here, the complete absence of any (much less adequate) case-specific evidence justifying an exigency compels this outcome.

Accordingly, DeMayo has established, on the basis of the pleadings, the elements of a cause of action under Bivens. Our inquiry does not end here, however, because Nugent and Lugas have asserted the affirmative defense of qualified immunity.

## B. Qualified Immunity

Although the district court found that Nugent and Lugas infringed DeMayo's rights under the Fourth Amendment, it nevertheless dismissed DeMayo's claims on the grounds of qualified immunity. "Qualified immunity is intended to shield public officials 'from civil damages liability as long as their actions

-12-

could reasonably have been thought consistent with the rights they are alleged to have violated.'" Fabiano v. Hopkins, 352 F.3d 447, 452-53 (1st Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)). In assessing a claim of qualified immunity, we conduct three separate inquiries:

> (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.

Burke v. Town of Walpole, 405 F.3d 66, 77 (1st Cir. 2005) (quoting Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004)) (internal quotation marks omitted). As discussed above, the pleadings establish the violation of DeMayo's right to be free from unreasonable searches under the Fourth Amendment.

Likewise, we resolve the second prong, which requires that the constitutional rights at issue be clearly established, in favor of DeMayo. Under this prong, "[w]e consider whether existing case law gave the defendants 'fair warning that their conduct violated the plaintiff's constitutional rights.'" Jennings v. Jones, 499 F.3d 2, 16 (1st Cir. 2007) (quoting Suboh v. Dist. Attorney's Office of Suffolk, 298 F.3d 81, 93 (1st Cir. 2002)). "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly

-13-

established."  Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 65 (1st Cir. 2004) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)) (internal quotation marks omitted).  This inquiry requires us to examine the specific factual context in question to see whether the law was sufficiently clear to place an officer on notice of the illegality of his conduct at the time of the incident.  See id.

We do not, however, require that "the facts of prior cases [providing notice] . . . be materially similar . . . ."  Id. at 65-66.  "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful[.]'"  United States v. Lanier, 520 U.S. 259, 271 (1997) (third alteration in original) (quoting Anderson, 483 U.S. at 640).  Thus, the "second prong does not require that there have been another case 'exactly on all fours with the facts of [the instant] case.'"  Riverdale Mills, 392 F.3d at 66 (quoting Suboh, 298 F.3d at 94); see also Jennings, 499 F.3d at 17 (holding that the unlawfulness of conduct that violates core protections of the Fourth Amendment should be readily apparent to officials regardless of absence of factually similar cases); Wilson v. City of Boston, 421 F.3d 45, 57 (1st Cir. 2005) (holding that law was clearly

established despite the plaintiff's failure to "identif[y] any cases in which this issue has arisen in [this] context . . .").

The district court essentially mandated that, to avoid dismissal, DeMayo find a case involving a violation of an individual's constitutional rights under the exact same set of circumstances. The proper inquiry is more abstract: whether Nugent and Lugas were on notice that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." Kirk v. Lousiana, 536 U.S. 635, 638 (2002); see also Payton v. New York, 445 U.S. 573, 590 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").

In our view, the "firm line" drawn by Kirk and Payton provided Nugent and Lugas with sufficient notice that their entry into DeMayo's home was in violation of clearly established law. The defendants contend that the doctrine of exigent circumstances is an expanding area of law, the contours of which are not clearly established. The fact that the doctrine of exigent circumstances is evolving, however, does not necessarily mean that every situation implicating the subject touches upon the supposed nebulous borderline of acceptable conduct. Regardless of whether the outer boundaries of the doctrine are clearly defined, the defendants' conduct fell squarely outside the realm of legitimate

-15-

uncertainty.  See Lovelace v. Lee, 472 F.3d 174, 198 (4th Cir. 2006) (explaining that qualified immunity was unavailable because "[a]lthough the outer boundaries of [the relevant law] may have been uncharted at the time, its core protections were not"); Suboh, 298 F.3d at 97 (reasoning that "[w]hatever the exact contours of the right [in question], this case falls well within the area of clarity") (internal citation omitted).  As explained above, the record is utterly bereft of specific facts that could have justified the officers' entry.  Thus, without disputing the premise, it is a non sequitur for Nugent and Lugas to argue that because the precise quantum or nature of evidence that gives rise to exigent circumstances is not fully fleshed out in the case law, they are entitled to qualified immunity.  Law enforcement officers may not violate constitutional rights, then expect qualified immunity when a court refuses to craft an unprecedented exception to a clearly established rule of law.

Finally, we turn to the third prong of the qualified immunity inquiry.  We must determine whether an objectively reasonable official, in the same position as Nugent and Lugas, would have believed his actions violated DeMayo's clearly established rights under the Fourth Amendment.  See Riverdale Mills, 392 F.3d at 61.  In this situation, there were no factual ambiguities or close calls that would render the defendants' conduct objectively reasonable.  See id.  Furthermore, the

-16-

circumstances under which Nugent and Lugas entered the home cannot be characterized as "tense, uncertain, and rapidly evolving." See Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)) (internal quotation marks omitted). To the contrary, the officers acted upon a prearranged signal given while events were proceeding according to plan, before even the inception of the passive, non-violent "belligerence" offered by Gary DeMayo. Moreover, the "firm line" prohibiting warrantless entries absent exigent circumstances should have made application of the controlling legal standard simple. See Riverdale Mills, 392 F.3d at 61.

Accordingly, the doctrine of qualified immunity does not shield Nugent and Lugas from liability.

## C. Judgment on the Pleadings

Nugent and Lugas argue that, even if the district court erred in dismissing this case, granting partial judgment in favor of DeMayo is inappropriate because Nugent and Lugas "have not yet been called upon, or required, to submit evidence that would support their actions." This contention ignores the nature of a motion for judgment on the pleadings under Rule 12(c). If Nugent and Lugas wished to present evidence of additional facts that might refute or undermine DeMayo's pleadings, the place to do so was in their response to his motion. At that point, the proper course for the district court would have been to convert the motion into one

for summary judgment.  See Fed. R. Civ. P. 12(d) ("If, on motion under . . . [Rule] 12(c), matters outside the pleadings are presented to and not excluded by the court, this motion must be treated as one for summary judgment . . . .").  Having failed to present any such evidence, by affidavit or otherwise, Nugent and Lugas may not now seek a second bite at the apple when they have not availed themselves of the procedures provided to them by the Rules.  The purview of Rule 12(c) would be nugatory if litigants could simply object to the procedure, with vague intimations of unspecified factual disagreements, to defeat a motion for judgment on the pleadings without presenting any evidence to suggest that the opposing party is not entitled to relief.

Accordingly, DeMayo is entitled to partial summary judgment on the pleadings.

### III.  CONCLUSION

For the foregoing reasons, we reverse the decision of the district court.  We render partial judgment on the pleadings in favor of DeMayo on his claims against Nugent and Lugas and remand for further proceedings consistent with this opinion.

Reversed and remanded.