Lucilo **TAVAREZ–GUERRERO,**
et al., Plaintiffs

v.

Pedro **TOLEDO–DAVILA,**
et al., Defendants.

Civil No. 07–2250 (JAG).

United States District Court,
D. Puerto Rico.

May 16, 2008.

---

Gladys E. Guemarez–Santiago, Gladys E. Guemarez Law Office, San Juan, PR, for Plaintiff.

Maria Judith Surillo, Monica A. Sanchez–Rivera, Valerie Maldonado–Rivera, Department of Justice, Margarita Cintron–Solla, Mercado & Soto, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Pedro Toledo Davila's ("Toledo") Motion to Dismiss. (Docket No. 16). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Toledo's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 28, 2007, Lucilo Tavarez Guerrero ("Lucilo"), Santos Evelyn Bonilla Diaz ("Santos"), and the conjugal partnership composed by both of them (collectively "Plaintiffs") filed the present complaint. Plaintiffs state that on April 12, 2007, on or around 7:00 pm, several municipal and state police officers forcefully broke into their home as if they were conducting a drug raid. Plaintiffs claim that the police officers did not have a search warrant and completely ignored their pleas and inquiries about why they were there and what they were looking for. Plaintiffs were then arrested by the police officers. Santos claims that during her arrest, Agent Marvin Colon ("Marvin"), one of the police officers present at her house, violently threw her to the ground and handcuffed her. Santos also claims that Marvin then dragged her for a distance of about sixty (60) feet and brusquely pushed her into a patrol car. According to Santos, as a result of said action, she suffered several cuts, bruises and trauma to her head, face, arms and legs.

Plaintiffs state that Marvin then arrested Lucilo. Plaintiffs aver that after they were arrested, the police officers proceeded to conduct a warrantless search of their house, taking a machete and their keys.

Afterwards, the police officers then took Santos to the Barrio Obrero Police Station and Lucilo to the municipal police station. According to Plaintiffs, they stayed in their prison cells without food or water until 12 Noon of the following day when they were both taken to the San Juan Judicial Center in Hato Rey. At the Judicial Center, Plaintiffs were handcuffed and placed in prison cells for two additional hours. On April 13, 2007, criminal charges were filed against Plaintiffs, however, they were dismissed on May 15, 2007. Judgment to that effect was entered on that same date and notified on June 1, 2007.

Plaintiffs filed the present complaint alleging that their arrest was illegal. Furthermore, Plaintiffs aver that they were submitted to an unreasonable search and seizure in the privacy of their homes. Moreover, Plaintiff claim that excessive force was used against them by the police officers involved in her arrest. Plaintiffs request money damages under the Civil Rights Act, 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendment of the Constitution of the United States, the Constitution of the Commonwealth of Puerto Rico and under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141.

The present complaint was filed against Marvin, other police officers, Toledo, and the Mayor of San Juan. According to Plaintiffs, Marvin is liable to them in his personal capacity for the acts that he committed on April 12, 2007. Plaintiffs contend that Toledo, as Chief of Police in Puerto Rico, is liable because he implemented policies, laws and regulations, which promote illegal search and seizures and violations of civil rights. Furthermore, Plaintiffs contend that Toledo is liable because he did not adequately train the Puerto Rico police officers that took part in the aforementioned events (hereinafter

"the police officers"). Finally, Plaintiffs allege that Toledo failed to take disciplinary actions against the police officers. (Docket No. 3).

On March 13, 2008, Toledo moved to dismiss Plaintiffs' complaint. Toledo avers that Plaintiffs have failed to state a valid constitutional claim under the Fifth, Eighth and Fourteenth Amendments. Toledo also claims that he is entitled to qualified immunity. In addition, Toledo contends that Plaintiffs' claims should be dismissed because he is protected by the *non-respondeat superior* liability doctrine. Finally, Toledo alleges that Plaintiff's state law claims should also be dismissed. (Docket No. 16). On May 5, 2008, Marvin moved to join Toledo's Motion to Dismiss. Specifically, Marvin seeks to join all of Toledo's arguments excluding the *non-respondeat superior* liability doctrine argument. (Docket Nos. 28 and 29). On May 6, 2008, Marvin's request for joinder was granted by this Court. (Docket No. 30).

## STANDARD OF REVIEW

A. *Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Standard*

In *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly,* 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to

raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (quoting *Correa-Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

## Discussion

 Plaintiffs bring the present suit under Section 1983. It is well settled law that Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal citations and quotations omitted). Under section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Destek Group, Inc. v. State of New Hampshire Public Utilities Commission,* 318 F.3d 32, 39 (1st Cir.2003); *DiMarco-Zappa v. Cabanillas,* 238 F.3d 25, 33 (1st Cir.2001). Secondly, a plaintiff must show the defendant's conduct deprived a person

of rights, privileges or immunities secured by the Constitution of the United States. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989).

In the case at bar, all the named Defendants are state officials. As such, the first requirement of a Section 1983 claim has been met. Thus, this Court must address whether Plaintiff has valid constitutional claims under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendment of the Constitution of the United States. We begin with the Fifth Amendment.

### 1) *Fifth Amendment*

Toledo contends that Plaintiffs' Fifth Amendment claims against him should be dismissed. According to Toledo, the Due Process Clause of the Fifth Amendment is inapplicable to him because he is an employee of the Commonwealth of Puerto Rico and no federal actors are involved. This Court agrees.

The due process clause of the Fifth Amendment states in pertinent part that: "No person shall ... be deprived of life, liberty, or property, without due process of law ..." U.S. Const. amend. V. The Fifth Amendment applies only to actions of the federal government not those of private individuals, nor of state governments. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *see also Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 448 (1st Cir.1983).

In the case at bar, only state officials are named defendants. Thus, there is no federal government action. As such, the Fifth Amendment is inapplicable here. Therefore, Plaintiff's Fifth Amendment claims shall be dismissed as to all Defendants because they are all state actors.

### 2) *Eighth and Fourteenth Amendments*

Toledo argues that Plaintiffs do not have a valid claim under the Eighth and Four-

teenth Amendments. In their complaint, Plaintiffs claim that the police officers used violence and excessive force against them during their arrests. Furthermore, they argued that they were held in a prison cell for hours without food or water.

Most excessive force claims are analyzed under the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishment. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, the Supreme Court has held that "[w]here, as here, the excessive force claim arises in the context of an arrest ... of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." *Id.* Likewise, the Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395, 109 S.Ct. 1865. Thus, we find that the Eighth and Fourteenth Amendments are inapplicable to Plaintiffs' allegation that the police officers used excessive force during their arrest.

However, Plaintiffs alleged that they were incarcerated for a substantial period of time without food and water. This certainly implicates the Eighth and Fourteenth Amendments. The Supreme Court has held that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical

care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

▮ In the case at bar, Toledo opposes Plaintiffs' Eighth Amendment violation claim because said claim does not implicate conditions of punishment or incarceration. As just mentioned, Plaintiffs argue that they were held in the state police stations without food or water for a substantial period of time. Taking this well pleaded fact as true and drawing all inferences in Plaintiffs' favor leads us to the conclusion that Plaintiffs may have a valid Eighth and Fourteenth Amendment claim. As such, at this time we shall not dismiss Plaintiffs' claims under the Eighth and Fourteenth Amendment.

### 3) *Fourth Amendment*

▮ As just mentioned, a claim that law enforcement officers have used excessive force in the course of an arrest or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. "The test of reasonableness under the Fourth Amendment is an objective one." *L.A. County v. Rettele,* —— U.S. ——, 127 S.Ct. 1989, 1992, 167 L.Ed.2d 974 (2007). Said test must be applied taking into consideration the facts and circumstances of each particular case "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The

use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time are certainly unreasonable actions. *L.A. County v. Rettele,* 127 S.Ct. at 1993.

▮ Santos avers that during her arrest she was violently thrown against the floor and dragged sixty (60) feet by the police officers. In his Motion to Dismiss, Toledo did not address Plaintiffs' Fourth Amendment claim. From the facts alleged by Plaintiffs, it appears that Santos, a sixty (60) year old housewife, represented no threat to the police officers present at her house. There are no allegations on the part of Toledo that Santos was armed, dangerous or that for any other reason she posed a threat to the police officers. Thus, taking Plaintiffs' well pleaded facts as true and drawing all reasonable inferences in Plaintiffs' favor, this Court finds that there could be a Fourth Amendment violation in the manner in which Santos was arrested.

▮ The Fourth Amendment is also implicated here because Plaintiffs allege that the police officers conducted a warrant-less search of their house. It is well settled that "absent consent or exigency, a warrantless search of the home is presumptively unconstitutional under the Fourth Amendment." *DeMayo v. Nugent,* 517 F.3d 11, 15 (1st Cir.2008) (internal citation omitted). "To show exigent circumstances, the police must reasonably believe that 'there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.'" *Id.* (citations omitted). "Proof of exigent circumstances should be supported by particularized, case-specific facts, not simply generalized suppositions about the behavior of a particular class of criminal suspects." *Id.* (citation omitted).

As mentioned previously, Toledo did not proffer any arguments as to Plaintiffs' Fourth Amendment violation claim for the

alleged warrantless search conducted in their house. Since, there is no allegation that there was a valid search warrant or that Plaintiffs consented to the search or that exigent circumstances were present, this Court finds that the search conducted by the police officers in Plaintiffs' home is presumptively unconstitutional under the Fourth Amendment. As such, Plaintiffs' Fourth Amendment claim shall not be dismissed.

### 4) Ninth Amendment

■ Plaintiffs contend that their Ninth Amendment right was also violated. However, "[t]he Ninth Amendment—which stipulates that 'the enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people'—does not create substantive rights beyond those conferred by governing law." *Martinez–Rivera v. Ramos*, 498 F.3d 3, 9 (1st Cir.2007)(internal citations omitted). Accordingly, Plaintiffs' Ninth Amendment violation claim against all Defendants in the case at bar shall be dismissed.

This Court finds that Plaintiff may have valid claims under the Fourth, Eighth and Fourteenth Amendments. Furthermore, all the Defendants are state officials. As such, we hold that at this time Plaintiffs have raised their right to relief under Section 1983 above the speculative level. Therefore, Plaintiffs' Section 1983 claim shall not be dismissed.

### 5) Qualified Immunity

■ We will now discuss whether the doctrine of qualified immunity bars Plaintiffs' claims against Toledo and Marvin. Qualified immunity protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment. *Santana v. Calderon*, 342 F.3d 18, 23 (1st Cir.2003) (quoting *Ryder v. United States*, 515 U.S. 177, 185, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)).

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.2004) (citing *Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 90 (1st Cir.2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818–819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To overcome a qualified immunity defense, a plaintiff must lead the Court to answer all three prongs of this test in the affirmative. *Mihos v. Swift*, 358 F.3d at 98–99. "In order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Moreover, in determining whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue, "the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Singer v. Maine*, 49 F.3d 837, 844 (1st Cir.1995) (citations omitted).

██ This Court has found that Plaintiffs' allegations taken as true, establish a Fourth, Eighth and Fourteenth Amendment violation. The case law cited which includes Supreme Court and First Circuit cases demonstrate that said rights were clearly established at the time of the alleged violation. It is well established that police officers cannot used excessive force when arresting a person. Furthermore, it is well settled that a person cannot be held in a prison cell without food or water for a substantial period of time. Finally, there can be no doubt that there is a presumption of unconstitutionality in warrantless searches of homes especially when no one consented to the search and no exigent circumstances were present.

Furthermore, this Court finds that a reasonable official would not have believed that acts committed by the police officers on April 12, 2007 were lawful in light of clearly established law and the information the officials possessed at the time of this allegedly unlawful conduct. Any reasonable police officer is aware that it is unlawful to use excessive force when arresting an individual, especially when said individual is a sixty (60) year old woman. Furthermore, a reasonable officer is aware that it is illegal to hold a prisoner without food or water. Finally, a reasonable officer would not perform a warrantless search of a home especially when no one consented to the search and when no exigent circumstances are present. Since the answer to all three prongs of qualified immunity test is in the affirmative, the Court finds that Plaintiff has overcome the qualified immunity defense raised by Toledo and Marvin.

6) *Supervisor Liability*

██ Toledo also contends that Plaintiff's claims should be dismissed because he is protected by the *non-respondeat superior* liability doctrine. It is well settled law that there is no *respondeat*

*superior* liability under section 1983. *Ayala–Rodriguez v. Rullan*, 511 F.3d 232 (1st Cir.2007) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). Under section 1983, supervisory liability can only be grounded on the supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir. 2005) (internal citation omitted). "Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence … amounting to deliberate indifference." *Id.* (internal citations and quotations omitted). A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir.1989). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir.1995) (internal citations and quotations omitted).

Toledo did not directly participate in the April 12, 2007 events. As such, Toledo can only be found liable if first, the behavior of his subordinates results in a constitutional violation. As previously mentioned, this Court finds that there could be several constitutional violations on the part of the police officers. As such, for purposes of this analysis, the answer to this first factor is in the affirmative.

Next, we must consider whether Toledo's actions or inactions were affirmatively linked to the police officer's behavior. Plaintiffs aver that Toledo is liable because he implemented policies, laws and regulations, which promoted illegal search and seizures and the violations of civil rights. Furthermore, Plaintiffs contend that Toledo is liable because he failed to adequately train the police officers. Finally, Plaintiffs allege that Toledo failed to take disciplinary actions against the police officers.

■ Plaintiffs' claim of inadequate training require proof that the failure to train was a policy or deliberate choice made by Toledo and that there is a direct link between Toledo's inaction and the constitutional violation. *See Bowen v. City of Manchester*, 966 F.2d 13, 18 (1st Cir.1992). Evidence of an isolated negligent act is not sufficient to satisfy this heavy burden. *See id.* With regards to Toledo's lack of practices and procedures, Plaintiff must show that Toledo's policies or customs caused the alleged constitutional deprivations. Furthermore, Plaintiff must show that the asserted policy was well-settled and widespread and Defendants did nothing to end the practice. *See Elliott v. Cheshire County*, 940 F.2d 7, 12 (1st Cir. 1991).

■ Plaintiffs have only proffered general allegations that Toledo implemented policies, and that he failed to discipline and adequately train the Puerto Rico police officers. According to Plaintiffs, Toledo's actions and inactions led to the alleged constitutional violations suffered by them. Toledo only contends that said allegations do not have a direct relation to the events of April 12, 2007. Even though we find that Plaintiff has certainly not proven that there is supervisor liability in the present case, it has nonetheless, raised his right to relief above the speculative level. As such, this Court will not dismiss Plaintiff's claims against Toledo.

### 7) *Supplemental Law Claims*

■ Toledo also argued that Plaintiffs' state law claims should be dismissed. This Court should decline to exercise supplemental jurisdiction over a plaintiff's supplemental jurisdiction claims when all federal claims are dismissed. *See Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.") (citations omitted). Since this Court will not dismiss all the federal claims in the case at bar, Plaintiffs' state law claims shall not be dismissed.

### CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** in part and **DENIES** in part Toledo's Motion to Dismiss. (Docket No. 16). Only Plaintiffs' Fifth and Ninth Amendment claims shall be dismissed.

IT IS SO ORDERED.