Alan NISSELSON, Trustee of the Dictaphone Litigation Trust, successor-in-interest to claims of Dictaphone Corporation, Plaintiff,

v.

Jo LERNOUT, et. al., Defendants.

Civil Action No. 03–10843–PBS.

United States District Court, D. Massachusetts.

July 25, 2008.

---

Max Folkenflik, Margaret McGerity, Folkenflik & McGerity, Regina Griffin, Brauner, Baron, Rosenzwseig & Klein LLP, New York, NY, Karen D. Hurvitz, Jamaica Plain, MA, for Plaintiff.

Jill L. Brenner, Peter E. Gelhaar, Jill Brenner Meixel, Donnelly, Conroy & Gelhaar, LLP, Michael L. Chinitz, Alan D. Rose, Sr., Rose, Chinitz & Rose, Gus P. Coldebella, Goodwin Procter, LLP, Michael P. Connolly, Murtha Cullina LLP, Gordon M. Jones, III, Dennis A. Murphy, Nixon Peabody, LLP, Charles P. Kindregan, Looney & Grossman, Matthew J. Matule, Skadden, Arps, Slate, Meagher & Flom LLP, Robert P. Sherman, DLA Piper U.S. LLP, Boston, MA, Donald H. Chase, Morrison Cohen LLP, Edward P.

Gilbert, Morrison Cohen Singer & Weinstein, LLP, Jonathan K. Cooperman, Kelley Drye & Warren LLP, Thomas E. Engel, Howrey LLP, Rupinder Hans, Engel & McCarney, James G. McCarney, Howrey LLP, Gary J. Mennitt, Dechert LLP, Nicholas W.C. Corson, John A. Redmon, George A. Salter, Hogan & Hartson, LLP, New York, NY, Ada Fernandez Johnson, John B. Missing, Debevoise & Plimpton, LLP, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. *INTRODUCTION*

This case arises out of the stock-for-stock merger of Dictaphone Corporation ("Old Dictaphone") into a subsidiary of Lernout & Hauspie, N.V. ("L & H"). The entity that emerged from the merger ("New Dictaphone") had a short life. Within months of its creation, the public disclosure of an accounting fraud scheme at L & H prompted intense public scrutiny and criminal investigations, rendered L & H's stock worthless, and ultimately led New Dictaphone, the post-merger entity, to file for bankruptcy in November 2000.

In this case, Plaintiff Alan Nisselson ("the Trustee"), Trustee of the Dictaphone Litigation Trust (the holder of New Dictaphone's legal claims arising from the merger), alleges that, by enabling this ill-fated merger to occur, the Directors and controlling shareholders of Old Dictaphone each breached the fiduciary duty that he owed to the corporation.

Defendants move to dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).[1] Defendants assert several grounds for dismissal, including: that the Trustee's claims are barred by the affirmative defense of in pari delicto; that the Trustee failed to assert any legally cognizable damages; that the Trustee's claims are time-barred; and that the Trustee's claims against the Director Defendants must be dismissed pursuant to an exculpatory provision in the corporation's certificate of incorporation. Defendants also move to dismiss the complaint for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), and suggest that the court should decline to exercise supplemental jurisdiction.

After a hearing, the motions to dismiss are *ALLOWED.*

### II. *FACTUAL BACKGROUND*[2]

The First Amended Complaint ("Complaint") alleges the following facts. In early 2000, L & H, an international business leader in the speech and language technology sector, and its investment banker SG Cowen approached one of its major competitors—Old Dictaphone (Dictaphone Corporation at the time)—to discuss the possibility of acquisition. (Compl. ¶ 183.) At that time, Stonington Entity Defen-

---

1. Two separate motions were submitted by the defendants. First, Defendants Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P., Stonington Holdings, LLC (together the "Stonington Entity Defendants"), Alfred J. Fitzgibbons, III, Emil F. Jachmann, Alexis P. Michas, Scott M. Shaw, and Peter P. Tong (together the "Director Defendants") jointly submitted a motion to dismiss. (Docket No. 301.) Defendant Joseph D. Skrzypczak submitted a separate motion to dismiss. (Docket No. 304.) For purposes of this Memorandum and Order,

Stonington Entity Defendants, Director Defendants, and Mr. Skrzypczak will be collectively referred to as "Defendants" except when necessary to distinguish between them.

2. This Court has written numerous opinions concerning the alleged fraudulent scheme at L & H. Familiarity with the facts set out in those opinions is assumed. *See Nisselson v. Lernout,* 2004 WL 3953998, at *1 n. 2 (D.Mass. Aug. 9, 2004) (citing cases detailing the alleged fraudulent scheme at L & H), *aff'd,* 469 F.3d 143 (1st Cir.2006).

dants owned approximately 96 percent of the authorized and outstanding stock of Old Dictaphone. (Compl. ¶¶ 89, 183.) Defendants Alfred J. Fitzgibbons, III, Emil F. Jachmann, Alexis P. Michas, Scott M. Shaw, Joseph D. Skrzypczak, and Peter P. Tong ("Director Defendants") were, at that time and through the time of the merger, each active Directors of Old Dictaphone. (Compl. ¶ 88.)

By February 2000, negotiations had intensified and both entities—L & H and Old Dictaphone—began conducting due diligence investigations of each other. (Compl. ¶ 192.) For its part, Old Dictaphone retained Hambrecht, currently JP Morgan Chase/Hambrecht & Quist, to evaluate the fairness of the transaction and Deloitte and Touche to perform a due diligence investigation of L & H. (Compl. ¶ 195.) Throughout the diligence process, L & H's auditors (KPMG Belgium and KPMG US) provided Old Dictaphone and its advisors with documentation and descriptions of its prior audits, (Compl. ¶ 196), all of which "confirmed the rosy picture of L & H as a potential merger partner painted in the [publicly available] audited L & H financial statements." (Compl. ¶ 202.)

Preparations for merger continued at a fast pace. On February 17, 2000 and March 1, 2000, Old Dictaphone's Board of Directors voted to approve the merger with L & H. (Compl. ¶ 88.) On March 7, 2000, L & H, Stonington, and Old Dictaphone entered into the first of a series of agreements pursuant to which L & H would acquire Old Dictaphone. (Compl. ¶ 203.) Less than two months later, on May 5, 2000, the merger was completed. (Compl. ¶ 221.) The mechanics of the merger were as follows: L & H acquired all of the outstanding stock of Old Dicta-

phone (96 percent of which was held by the Stonington Entity Defendants) in exchange for approximately 9.4 million shares of L & H common stock and L & H's assumption of approximately $429 million of Old Dictaphone debt and obligations. (Compl. ¶ 203, 221.) Given that, on the date of closing, the L & H common stock was trading at $53.97 per share, the price of the merger was over $930 million.[3] (Compl. ¶ 221.)

Organizationally, Old Dictaphone merged into a wholly-owned subsidiary of L & H ("Dark Acquisition Corp."), created under Delaware law solely for the purpose of effectuating the merger. (Compl. ¶ 44.) It was this subsidiary that survived the merger, ultimately changing its name to Dictaphone, the post-merger entity which this Court and the parties refer to as "New Dictaphone." (Compl. ¶ 44.)

The honeymoon for this corporate marriage was short-lived. After a June 2000 SEC filing by L & H revealed highly irregular sales information in Asia, questions from the *Wall Street Journal* and the SEC ultimately forced L & H to admit that the strong financial picture it had painted was an illusion. (Compl. ¶¶ 225–43, 260.) Rather than, as L & H had represented, having yielded a $70 million profit in approximately 18 months, L & H had actually incurred a $70 million *loss* in that same period. (Compl. ¶ 38.) The price of L & H shares plummeted, and just six months after the closing, on November 29, 2000, L & H and New Dictaphone filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Compl. ¶¶ 263, 266.) On March 13, 2002, the United States Bankruptcy Court for the District of Delaware approved the Third Amended Plan of Reorganization, and New

---

**3.** At the date the Merger Agreement was signed, the L & H common stock price was lower, leading to a total value of approximately ly $900 million if calculated as of March 7, 2000. (Compl. ¶ 203.)

Dictaphone was discharged from bankruptcy. All of New Dictaphone's claims arising from the merger transaction were assigned to the Dictaphone Litigation Trust. (Compl. ¶¶ 39, 45.)

This lawsuit is brought by Alan Nisselson ("the Trustee"), the trustee of the Dictaphone Litigation Trust. In May 2003, Nisselson filed an action seeking to recover the damages suffered by Dictaphone as a result of the fraud. Nisselson filed an amended complaint in August 2003.

In August 2004, this Court dismissed the Trustee's claims against SG Cowen Securities Corporation ("SG Cowen") (L & H's investment banker) and other defendants on two grounds: (i) that the Trustee lacked standing because he could not assert legally cognizable damages, and (ii) that the doctrine of in pari delicto barred the suit. *See Nisselson v. Lernout,* 2004 WL 3953998 (D.Mass. Aug. 9, 2004); *Nisselson v. Lernout,* 2004 WL 3954018 (D.Mass. Aug. 13, 2004). After this Court certified the judgment for immediate appeal, the First Circuit affirmed this Court's dismissal, holding that the in pari delicto doctrine precluded the Trustee from advancing his claims against SG Cowen and other defendants. *Nisselson v. Lernout,* 469 F.3d 143 (1st Cir.2006) (hereinafter "*Nisselson I*"). Thus, only the Trustee's breach of fiduciary duty claims against the former directors and controlling shareholders remain; these claims are the subject of the current motion to dismiss. (Compl. ¶¶ 419–423) ("Tenth Claim for Relief Against the Dictaphone Directors and the Dictaphone Controlling Shareholders for Breach of Fiduciary Duty").

## III. *DISCUSSION*

### A. Motion to Dismiss Standard

For the purposes of this motion, this Court takes all of the complaint's well-pleaded facts as true and indulges all reasonable inferences in the plaintiff's [the Trustee's] favor. *ACA Fin. Guar. Corp. v. Advest, Inc.,* 512 F.3d 46, 58 (1st Cir.2008). "[T]o survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." *Id.* (noting that the Supreme Court, in *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1967–69, 167 L.Ed.2d 929 (2007), "recently altered the Rule 12(b)(6) standard in a manner which gives it more heft"); *see also Rodríguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007).

The "inevitable success" of an affirmative defense may form the basis for a dismissal under Fed.R.Civ.P. 12(b)(6), but only if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Nisselson I,* 469 F.3d at 150 (quoting *Rodi v. S. New Engl. Sch. of Law,* 389 F.3d 5, 12 (1st Cir.2004)).

### B. In Pari Delicto

#### 1. *Nisselson I*

■ Defendants argue that the Trustee's claims are barred by the doctrine of in pari delicto. This Court is not starting out with a blank slate; the First Circuit has ruled on similar arguments in this very lawsuit. *See Nisselson I,* 469 F.3d at 158 (affirming this Court's dismissal of Trustee's fraud-based claims on in pari delicto grounds). In pari delicto is both an affirmative and an equitable defense that, generally speaking, bars plaintiffs from recovering damages resulting from their own wrongdoing. *Id.* at 151. Two main premises underpin the doctrine. First, "courts should not lend their good offices to mediating disputes among wrongdoers." *Id.* (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 306, 105 S.Ct.

2622, 86 L.Ed.2d 215 (1985)). Second, "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id.*

The Trustee's previously adjudicated claims against SG Cowen and other defendants fell within the ambit of the "hoary in pari delicto doctrine," *Nisselson I*, 469 F.3d at 147, because the "lineage of the claims pass[ed] directly through New Dictaphone," an entity that "[bore] at least as much responsibility for the asserted wrongdoing as any of the defendants." *Id.* at 153, 157.

In reaching this conclusion, the First Circuit initially determined that the Trustee was "acting in the place and stead" of New, not Old, Dictaphone. *Id.* at 153. It labeled New Dictaphone the "relevant comparator vis-á-vis the defendants for the purpose of determining the viability of the latter's in pari delicto defense." *Id.* Next, the First Circuit tested the situation against the "binary paradigm" of the doctrine, which restricts its application to situations in which "(i) the plaintiff, as compared to the defendant, bears at least substantially equal responsibility for the wrong he seeks to redress and (ii) preclusion of the suit would not interfere with the purposes of the underlying law or otherwise contravene the public interest." *Id.* at 152 (citing *Bateman Eichler*, 472 U.S. at 310–311, 105 S.Ct. 2622). Determining that, under Massachusetts law, L & H's wrongful conduct must be imputed to New Dictaphone for the purpose of applying the in pari delicto defense, the First Circuit declared the first prong satisfied. *Id.* at 156–57.

Turning to the second prong of the paradigm, the First Circuit rejected each of the Trustee's policy appeals, refusing to allow the Trustee to wash away the taint of New Dictaphone's wrongdoing. The Trustee first argued that applying the doctrine would frustrate the purpose of securities laws by allowing wrongdoers to escape liability, a notion that the First Circuit quickly discarded, reasoning that the Trustee was bringing his claims on behalf of a complicit party. *Id.* at 157. The Trustee then switched directions, arguing that withholding the doctrine would promote the purposes of securities laws by "discourag[ing] wrongdoers from engaging in future fraudulent schemes." *Id.* (quotation marks omitted). Yet the First Circuit again dismissed this argument as "turn[ing] reality on its head" because, as a complicit party, New Dictaphone should not be given "a second bite at the cherry." *Id.* Finally, the Trustee attempted a practical approach, positing that the true beneficiaries of his claims would be the creditors of Old Dictaphone, many of whom would not be able to recover their losses in any other way. *Id.* at 158. Again, the First Circuit rejected this equity-based appeal, questioning whether innocent creditors were truly foreclosed from pursuing actions against SG Cowen and other wrongdoers, and concluding that, even if the creditors lacked alternative means of recovery, "the equities are not nearly so clear-cut." *Id.* In the First Circuit's view, there was no compelling public policy reason to stop the in pari delicto defense from prevailing.[4] *Id.*

■ Defendants maintain that the First Circuit's holding constitutes the "law of

---

**4.** The First Circuit declined to address this Court's alternative ground for decision (i.e., that the Trustee lacked a "distinct injury" and was therefore unable to assert legally cognizable damages). *See Nisselson I*, 469 F.3d at 150–51 (explaining that the "distinct injury" question was one of prudential, not Article III, standing, and "bypass[ing]" the issue because the "record reflect[ed] a clear and sufficient basis apart from standing for affirming the district court's judgment").

the case" and thus functions to close the door to the Trustee's remaining claim. The Trustee, however, seeks to avoid this early end by distinguishing his current claims from those previously dismissed, correctly pointing out that neither this Court nor the First Circuit considered the current claims. Indeed, when considering the claims against SG Cowen and others, the First Circuit explicitly left open the possibility of a suit like this one when it stated, "the creditors (or the trustee, on their behalf) may well succeed in suits against Old Dictaphone's former directors, controlling shareholder, and outside accounting professionals." *Nisselson I*, 469 F.3d at 158. This Court therefore agrees with the Trustee that his current claims warrant a new and independent inquiry.

### 2. *Applying the Paradigm*
#### a. *Identifying the Wrong*

In the previously adjudicated claims, the Trustee was bringing actions against those who allegedly participated or aided in L & H's fraudulent scheme that enticed Old Dictaphone into the merger. Here, the Trustee asserts a claim against the former directors and controlling shareholders of Old Dictaphone not for fraud, but rather for breach of fiduciary duty for allowing Old Dictaphone to enter such a detrimental merger.

■ The parties do not dispute that the in pari delicto defense applies to a breach of fiduciary duty under Delaware law, and courts have held that the in pari delicto doctrine can apply to claims of fiduciary duty. *See In re Oakwood Homes Corp.*, 389 B.R. 357 (D.Del.2008) (holding that the doctrine of in pari delicto barred liquidation trust's breach of fiduciary duty claims against securities underwriter); *In re Scott Acquisition Corp.*, 364 B.R. 562, 566–67 (Bankr.D.Del.2007) (applying Florida law, but stating that the in pari delicto doctrine is the same under Florida and

Delaware law, and rejecting plaintiff's argument that in pari delicto could not apply to a breach of fiduciary duty claim). *See generally Nisselson I*, 469 F.3d at 152 (explaining that courts generally speak of a "single [in pari delicto] doctrine" because the "analysis ordinarily will be the same across a spectrum of different causes of action").

■ The Trustee makes much of this distinction, emphasizing that, because the core "wrongs" alleged in the current claims are breaches of fiduciary duties by Old Dictaphone's directors and controlling shareholders, these are not claims that New Dictaphone, or L & H, was complicit in. (Hr'g Tr. 23.) Thus, according to the Trustee, because L & H was not complicit in the specific wrong underlying the claim (i.e., breach of fiduciary duty), the Trustee contends the in pari delicto defense is inapplicable. *See Nisselson I*, 469 F.3d at 152 (stating that the doctrine is applied only when "the plaintiff . . . bears at least substantially equal responsibility for *the wrong he seeks to redress*") (emphasis added).

This argument not only lacks persuasive force, but also has been squarely rejected by courts. *See Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1090–91 (2d Cir.1997) (rejecting plaintiff's attempt to evade the in pari delicto defense on the grounds that his wrongdoing was not the same wrongdoing he sought to redress and deeming the argument to be "outdated," "hypertechnical," and "miss[ing] the mark"); *In re Oakwood Homes Corp.*, 389 B.R. at 371 (concluding that the plaintiff's attempt to "separate the 'wrongs'" committed by plaintiff and defendant was "unsupported by the relevant case law" and holding that the in pari delicto defense barred plaintiff's breach of fiduciary duty claims).

Moreover, it is impossible to ignore the close connection between the wrong in

which New Dictaphone was a "player" (fraudulently inducing Old Dictaphone into a merger) and the wrong that the claim seeks to redress (the failure of Defendants to detect that they were being defrauded). Put another way, the fraudulent player is suing the defrauded controlling shareholders and directors for negligently (or even recklessly) failing to detect the fraud, a double gotcha. According to the Trustee, Defendants repeatedly hamstrung the efforts of the outside entities it hired to perform due diligence by limiting the time and money allotted and ignoring red flags. (Hr'g Tr. 24–25.) These actions, even if wrongful, pale in comparison to the intentional fraud perpetrated by L & H (and imputed to New Dictaphone), satisfying the first prong of the binary paradigm governing the in pari delicto defense. *See Nisselson I*, 469 F.3d at 152 ("[T]he plaintiff, as compared to the defendant, bears at least substantially equal responsibility for the wrong he seeks to redress.").

### b. The Corporate Insider Exception

The Trustee seeks to blunt the effect of *Nisselson I* by arguing that he is saved by an exception to the in pari delicto doctrine which is well-established under Delaware law: that corporate insiders may not use the in pari delicto doctrine to shield themselves from suit.[5] *See In re HealthSouth Corp. Shareholders Litig.*, 845 A.2d 1096, 1107 & n. 20 (Del.Ch.2003) (rejecting CEO's attempt to use in pari delicto doctrine to avoid liability on unjust enrichment and equitable fraud claims and noting that "the application of the *in pari*

*delicto* doctrine has been rejected in situations when corporate fiduciaries seek to avoid responsibility for their own conduct vis-a-vis their corporations"), *aff'd*, 847 A.2d 1121 (Del.2004); *In re Granite Partners, L.P.*, 194 B.R. 318, 332 (Bankr. S.D.N.Y.1996) ("*In pari delicto* bars claims against third parties, but does not apply to corporate insiders or partners."). Without the corporate insider exception, a trustee would never be able to sue a debtor corporation's insiders for injuries incurred because of their wrongdoing. *In re Granite Partners, L.P.*, 194 B.R. at 332 (explaining that "only the trustee has standing to sue insiders ... for injuries to a corporation ... arising from their waste, mismanagement or breach of fiduciary duty").

To survive, though, the Trustee's "corporate insider" argument must escape the stranglehold of the logic of *Nisselson I*. The claims in both cases were held originally by Old Dictaphone (the corporation itself) and passed to the post-merger entity (Dark Acquisition Corporation, renamed New Dictaphone) at the moment of merger, pursuant to Delaware law. *See* Del. Code Ann. tit. 8, § 259(a) ("all property ... shall be vested in the corporation surviving or resulting from such merger or consolidation"); *see also Lewis v. Anderson*, 477 A.2d 1040, 1043 (Del.1984) ("[T]he right to a pending cause of action is an asset of a merged corporation which passes to the corporation surviving the merger."). Thus, the lineage of the right to sue is the same in both cases: each right originated with Old Dictaphone, went over

---

**5.** In *Nisselson I*, the First Circuit, following *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 84–85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (holding that state, not federal, law governs the imputation of wrongful conduct to a corporation that is asserting state law causes of action), applied Massachusetts law. *Nisselson I*, 469 F.3d at 152, 154 n. 3 (noting that "no party to this litigation has requested us to fashion federal common law" and that the

Trustee did not object to the district court's "one-size-fits-all approach" in deciding the in pari delicto defense). The Trustee asserts that Delaware law governs here. Defendants contend that Massachusetts law and Delaware law do not conflict on the "corporate insider" exception, and the Trustee has not demonstrated any real conflict. Accordingly, this Court need not decide which law applies. (*See* Hr'g Tr. 6–7; Defs.' Reply 3.)

to the Dark side at the moment of the merger, and ultimately was assigned to the Dictaphone Litigation Trust as part of the approved reorganization plan. *See Nisselson I,* 469 F.3d at 148, 153. Because, under *Nisselson I,* the Trustee stands in the shoes of New, not Old, Dictaphone, *id.* at 153, L & H's bad conduct is imputed to New Dictaphone for purposes of the in pari delicto doctrine. *Id.* at 157. Because the doctrine of in pari delicto applies to breach of fiduciary duty claims, under *Nisselson I,* the Trustee is barred from bringing this claim unless the corporate insider exception applies. *See id.* at 158.

To fortify his argument that the corporate insider exception salvages his claim, the Trustee asserts that each defendant, by holding a position of controlling shareholder or director, qualified as an "insider" of Old Dictaphone. Next, reasoning that under Section 259(a), an old corporation has its identity absorbed into that of the new corporation into which it was merged, the Trustee posits that, at the moment of merger, Old Dictaphone's insiders automatically became the insiders of the post-merger entity (now New Dictaphone). *See* Edward P. Welch et al., *Folk on the Delaware General Corporation Law: Fundamentals,* § 259.1 (2008) (commenting on 8 Del.Code Ann. tit. 8, § 259) (quoting *Argenbright v. Phoenix Fin. Co.,* 187 A. 124, 126 (Del.Ch.1936)); *see also Nisselson I,* 469 F.3d at 153 (citing both the merger agreement and Del.Code Ann. tit. 8, § 259(a) when concluding that "upon the consummation of the merger Old Dictaphone vanished into thin air and New Dictaphone inherited all of Old Dictaphone's choses in action"). Accordingly, under the corporate insider exception, New Dictaphone has the right to press the claim of breach of fiduciary duty against its own insiders (the Defendants).

For their part, Defendants vehemently challenge the Trustee's characterization of them as "insiders" of New Dictaphone. In their view, the only insiders to which this exception could apply are the insiders of *New* Dictaphone, and they contend they were insiders only of *Old* Dictaphone. Thus, the Defendants maintain that the corporate insider exception is inapplicable to their situation.

In some cases, a factual dispute as to whether a defendant qualifies as an insider renders the in pari delicto defense inappropriate at the motion to dismiss stage because the inquiry into insider status can be "fact-intensive and ... made only on a case-by-case basis." *In re Student Fin. Corp.,* 335 B.R. 539, 547 (D.Del.2005) (holding that the question of whether defendants were "insiders" for purposes of the in pari delicto defense could only be determined after full discovery and, as a result, denying the defendant's motion to dismiss). Here, while it is clear that the defendants were stockholders of the new entity, the record does not clearly support the contention that the corporate insiders of Old Dictaphone became corporate insiders of New Dictaphone as a factual matter. Rather, the Trustee seems to rest primarily on the legal argument that Old Dictaphone's insiders automatically became insiders of New Dictaphone.

The Trustee apparently made a similar assertion before the First Circuit in *Nisselson I,* 469 F.3d at 155 (noting that the Trustee "point[s] out that, *after* the merger, the directors of Old Dictaphone ... became directors of New Dictaphone"). It is unclear, however, whether the Trustee backed this assertion up with facts or simply made the same legal argument as he did in the current briefing.

Under *Nisselson I,* the correct moment to analyze the in pari delicto inquiry is at the time of the wrongdoing: "a party's culpability vel non must be based on its status at the time the alleged illegality

occurred." 469 F.3d at 155–56. The breaches alleged by the Trustee (that the Director Defendants' "voted to approve and effectuate the Merger" and that the Stonington Defendants "caused the Merger to be approved") all pre-dated or were contemporaneous with the merger. (Compl. ¶¶ 420–22.) Likewise, *the alleged fraud* underpinning New Dictaphone's imputed culpability was complete at this point. *See Nisselson I,* 469 F.3d at 155–56. Thus, even if the Trustee's proposition that the defendants became—in law or in fact—insiders of New Dictaphone following the merger were true, this change in status is too late to assist the Trustee in combating the in pari delicto defense.

This conclusion is in line with the First Circuit's reasoning in *Nisselson I.* Stating that "any post-merger changes in New Dictaphone's corporate governance or management are beside the point," the First Circuit rejected the Trustee's argument that the in pari delicto defense should not bar his claims because, after the merger, the directors of Old Dictaphone became directors of New Dictaphone. *Nisselson I,* 469 F.3d at 156. In reaching this conclusion, the First Circuit was contemplating the "innocent successor" exception—as opposed to the "corporate insider" exception—to the in pari delicto doctrine. Nevertheless, the crux of the First Circuit's reasoning—that the first prong of the in pari delicto inquiry must focus on the point in time when the alleged illegality occurred—remains applicable here.

### c. The Equities

This brings us to the second inquiry of the in pari delicto doctrine's "binary paradigm": whether preclusion of the suit would interfere with "the purposes of the underlying law or otherwise contravene the public interest." *Nisselson I,* 469 F.3d at 152. When analyzing the Trustee's claims against SG Cowen and other defendants, the First Circuit concluded that there was no compelling public policy reason to allow the Trustee to advance his claims, and thus affirmed the dismissal of his claims under the in pari delicto doctrine. *Id.* at 158. *See supra,* III.B.1.

The Trustee argues that this Court should decline to apply the in pari delicto bar because the fruits of recovery would ultimately go to the innocent creditors of Old Dictaphone. *See Scholes v. Lehmann,* 56 F.3d 750, 754–55 (7th Cir.1995) (explaining that when the wrongdoer will not be able to share in the corporation's recovery the defense of in pari delicto "loses its sting"); *Trenwick Amer. Litig. Trust v. Ernst & Young, L.L.P.,* 906 A.2d 168, 212 n. 132 (Del.Ch.2006) (noting that the "doctrine of *in pari delicto* has never operated in Delaware as a bar to providing relief to the innocent by way of a derivative suit").

More specifically, the Trustee contends that withholding the in pari delicto bar would be the just course of action because, by bringing and settling their own claims against the true wrongdoers (the participants in the fraud), the Defendants essentially "jumped the queue" and "established a different priority of recovery" than is proper under American bankruptcy law. (Hr'g Tr. 21.) Thus, the Trustee explains that the practical effect of his claims would be "to shift the money from the shareholders alone to the creditors and shareholders of the entity." (Hr'g Tr. 31.)

However, at the hearing, the Trustee stated that, as "a resolution of claims between Dictaphone and Lernout & Hauspie," the creditors of Lernout & Hauspie would receive "a small portion of the proceeds of the litigation trust." (Hr'g Tr. 30). He added that creditors of New Dictaphone would also receive recovery, and that the creditors of Old Dictaphone and the creditors of New Dictaphone are the same people. (Hr'g Tr. 31.) This uncer-

tain allocation of the proceeds to the creditors of both the defrauding and the defrauded corporations troubled the First Circuit in *Nisselson I*. There, the First Circuit stated that forcing the creditors to bring their own claims would be "preferable because the Trust beneficiaries may well include parties (most notably L & H) who were themselves complicit in the underlying fraud" and suspending the in pari delicto doctrine in this case would mean that "creditors with unclean hands would profit equally with innocents." *Nisselson I*, 469 F.3d at 157–58. The Trustee has not alleged that the plan of reorganization authorizes him to allocate the proceeds of the trust only to the debt of the Old Dictaphone, as opposed to the New.

The Trustee's claim of unfairness does have a ring of truth because it is unlikely that the creditors of Old Dictaphone have any direct or derivative claim for breach of fiduciary duty against the former insiders. The breach of fiduciary duty claims at issue here do not belong to the creditors, but to the bankrupt corporation. *See Pereira v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005) (explaining, in context of breach of fiduciary duty claim brought by bankruptcy trustee against former officers and directors of debtor corporation, that a trustee may only assert claims of the bankrupt corporation, not its creditors). *See generally Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991) ("It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself."). In fact, the Trustee emphasizes that he is not bringing claims belonging to Old Dictaphone's creditors, but rather that he is asserting claims of breach of fiduciary duty on behalf of New Dictaphone (and that, practically speaking, the funds recovered from New Dictaphone's claims would ultimately benefit the corporation's creditors). (Pl's. Opp'n 17).

Under Delaware law, "[i]t is well established that directors owe their fiduciary obligations to the corporation and its shareholders," but that "directors do not owe creditors duties beyond the relevant contractual terms." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del.2007). Moreover, in *Gheewalla*, decided after *Nisselson I*, the Supreme Court of Delaware recently held that "no *direct* claim for breach of fiduciary duties may be asserted by [either] the creditors of a solvent corporation that is operating in the zone of insolvency," *id.* at 101 (emphasis added), or the creditors of a corporation that is insolvent. *Id.* at 103. However, "the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. The corporation's insolvency 'makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value.'" *Id.* at 101–02 (footnotes omitted). At least one court has interpreted *Gheewalla* as holding that, under Delaware law, a creditor may bring a derivative action for breach of fiduciary duty against the directors or officers of a corporation when the corporation is in the "zone of insolvency." *Mims v. Fail*, 2007 WL 2872283, *3–4, 2007 Bankr.LEXIS 3240, *10–12 (Bankr.N.D.Tex. Sept. 18, 2007) (explaining that *Gheewalla* clarified that, under Delaware law, creditors of a corporation that is either insolvent or in the "zone of insolvency" can maintain derivative suits for breach of fiduciary duty against corporate directors).

The twist here is that Old Dictaphone was not insolvent (or in the zone of insolvency) at the time of the merger, and

therefore even a derivative claim seems unavailable to a creditor seeking to bring an independent suit. Even if Old Dictaphone could be said to have entered the insolvency zone at the time of the merger, because of the as-yet-to-be-uncovered fraud, the creditors would still be limited to derivative claims brought on behalf of the corporation; as a result, they would likely confront the same in pari delicto barrier as the Trustee does here.

Still, the Delaware Court points out that creditors have other means of protecting and asserting their interests: "While shareholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights." *Gheewalla,* 930 A.2d at 99. Because the Trustee has not demonstrated that recovery by the litigation trust will put money primarily into the pockets of the innocent creditors of Old Dictaphone, the "equities are not nearly so clear-cut" as to warrant withholding the otherwise appropriate application of the doctrine. *Nisselson I,* 469 F.3d at 158. As such, in this legal Rubik's Cube of a case, this Court concludes that the in pari delicto doctrine precludes the Trustee from pursuing his breach of fiduciary duty claims against Defendants.

## C. Delaware Code Section 102(b)(7)

 The Trustee claims that the Directors and controlling shareholders of Old Dictaphone violated their fiduciary duties to the corporation by failing to discover that L & H was perpetrating a massive fraud and, as a result, ultimately entering into a merger with L & H that was fatal to Old Dictaphone. In Delaware, directors of a corporation owe a fiduciary duty of due care and loyalty to both the corporation and its stockholders. Edward P. Welch et al., *Folk on the Delaware General Corporation Law: Fundamentals,* § 141.2.1 n. 28 (citing *Stone ex rel. AmSouth Bancorp. v. Ritter,* 911 A.2d 362, 370 (Del.2006)). Like directors, "dominant or controlling" shareholders or groups of stockholders are fiduciaries. *Pepper v. Litton,* 308 U.S. 295, 307, 307, 60 S.Ct. 238, 84 L.Ed. 281 (1939). "While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." *Id.*

The Defendants argue that, at most, the Trustee's Amended Complaint alleges that the directors and controlling shareholders breached their duty of due care. The Director Defendants then assert that, at least as to themselves, the claim must fail because Old Dictaphone had adopted a provision in its certificate of incorporation, pursuant to Del.Code Ann., tit. 8, § 102(b)(7), eliminating its directors' liability for damages for breaches of the duty of care. *See* Del.Code Ann. tit. 8 § 102(b)(7) (authorizing corporations to adopt clauses "eliminating or limiting the personal liability of a director ... for monetary damages for breach of fiduciary duty"); *see, e.g., In re McKesson HBOC, Inc. Sec. Litig.,* 126 F.Supp.2d 1248, 1278 (N.D.Cal.2000) (dismissing claim that directors of corporation violated their duty of care by failing to adequately investigate company that it was acquiring in merger because the corporation's charter contained an exculpatory clause, pursuant to Section 102(b)(7), for duty of care claims).

The Director Defendants acknowledge that, even with the exculpatory clause, they could not escape liability for breaches of their duty of loyalty or for acts or omissions not in good faith. *See* Del.Code Ann. tit. 8, § 102(b)(7)(i)-(iv) (expressly limiting the types of claims for which a

corporation can eliminate or limit its directors liability). Defendants, however, correctly point out that the Trustee does not specifically plead either of these violations, and that, even if he did, the allegations within the complaint do not support such claims.

■ When, as here, the validity of a waiver clause is not contested, "[t]he complaint must plead ... claims of non-exempt conduct [i.e., breach of duty of loyalty or acts or omissions not in good faith] with sufficient particularity to permit the court to reasonably conclude the directors' conduct falls outside the exemption." *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 810–11 (7th Cir.2003) (holding that the plaintiff's allegations which included "omissions not in good faith" and "intentional misconduct" were sufficient to overcome the director defendants' protection under a provision similar to Delaware's Section 102(b)(7)). Thus, a clear allegation of reckless or intentional misconduct, including a conscious disregard of a known risk, can satisfy this pleading requirement. *See id.* (citing *McCall v. Scott*, 250 F.3d 997, 1000–01 (6th Cir.2001)) (concluding that, under Delaware law, "duty of care claims based on reckless or intentional misconduct" are not precluded by a Section 102(b)(7) waiver because they are "commonly characterized as either a breach of the duty of loyalty or a breach of the duty of good faith" and that a director's conscious disregard of a known risk can be interpreted as an action not in good faith).

The Complaint, however, does not come close to satisfying this standard. In fact, the Complaint contains numerous facts demonstrating that (i) the perpetrators of the fraud (L & H) went to great lengths to conceal their wrongdoing from others, including the Defendants (Compl. ¶ 202), and (ii) the Directors and controlling shareholders hired reputable outside entities to evaluate the fairness of the transaction and to perform a due diligence investigation of L & H. (Compl. ¶ 195.) *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d at 1278 (dismissing fiduciary duty claim against directors for similar shortcomings). The fact that the *Wall Street Journal* ultimately discovered the fraud via public documents does not reasonably lead to the inference that the Directors and shareholders failure to do so was intentional or reckless. Moreover, as this Court understands the facts, the 10K filing which tipped off reporters was filed with the SEC on June 30, 2000, approximately one month *after* the merger was completed.[6] (Compl. ¶ 225.)

At the hearing, the Trustee stated that, if necessary, he could re-plead with additional details that support a finding of recklessness or otherwise actionable conduct by the Director Defendants. (Hr'g Tr. 23–26.) The Court need not address this offer in light of the earlier ruling.

### ORDER

The Court ***ALLOWS*** the Motions to Dismiss (Docket Nos. 301 and 304).

6. It is possible that the filing would have been provided to the Defendants' due diligence team ahead of the merger. However, even if that were the case, that fact alone would merely support a claim that the due diligence team failed to identify the irregular sales information. The complaint fails to allege the subsequent steps necessary to support a claim of reckless or intentional misconduct, or conscious disregard of risk by the Defendants (e.g., that the due diligence team raised the concern with the directors, the directors intentionally ignored or consciously disregarded this concern, etc.).